**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TYRIEK JORDAN, | : | Civil Action No. 12-7932 (AET) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BEVERLY HASTINGS, et al., | : | |
| | : | |
| Defendants. | : | |

RECEIVED

JUL 22 2013

AT 8:30_____M
WILLIAM T. WALSH CLERK

**APPEARANCES:**

Tyriek Jordan
South Woods State Prison
215 Burlington Road (South)
Bridgeton, NJ 08302
      Plaintiff pro se

**THOMPSON,** District Judge

     Plaintiff Tyriek Jordan, a prisoner confined at South Woods State Prison in Bridgeton,

New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights.[1]

---

[1] Based on his affidavit of indigence and the absence of three qualifying dismissals within 28
U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis
pursuant to 28 U.S.C. § 1915(a), will order the Clerk of the Court to file the Complaint, and will
assess a $350 filing fee.  The Court notes that Plaintiff submitted an outdated form of
Application for leave to proceed in forma pauperis, which states that the filing fee is $150.  This
Court, however, has previously advised Plaintiff that the filing fee is $350 and that he will be
assessed the full $350 filing fee if he is granted leave to proceed in forma pauperis.  See
generally Jordan v. Hastings, Civil Action No. 12-2424 (PGS) (D.N.J.).

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that, while he was confined at Mercer County Corrections Center from April 12. 2010, to March 25, 2011, he filed a formal complaint against Corrections Officer R. Hallett. Plaintiff alleges further that, on March 30, 2011, upon his transfer to the New Jersey Department of Corrections Central Reception and Assignment Unit ("CRAF"), Plaintiff was approached by Corrections Officer E. Hallet, who told Plaintiff that he would "see" Plaintiff when he went to the yard. Later, while Plaintiff was clearing the metal detector during yard movement, Corrections Officer E. Hallet called Plaintiff aside for a pat frisk. Plaintiff alleges that, while he was standing for the pat frisk, Corrections Officer E. Hallett suddenly began yelling, "Stop resisting!" Plaintiff alleges that he was then punched, kicked, and hit numerous times with batons by Corrections Officers E. Hallett, Christee, Valazquez, and Jambucci. Plaintiff alleges that, as a result of this beating, he suffered multiple contusions and lacerations inside and outside his left eyelid, that his left eye was swollen shut for several days, and that he continues to experience blurred vision and headaches.

Plaintiff alleges that he believes that Corrections Officers E. Hallett and R. Hallett are relatives and that the beating at CRAF was in retaliation for the complaint he had filed against Corrections Officer R. Hallett at Mercer County Corrections Center.

Plaintiff names as Defendants here Corrections Officer R. Hallett (employed at Mercer

2

County Correctional Center), CRAF Corrections Officers E. Hallett, Christee, Valazquez, and

Jambucci, and CRAF Administrator Beverly Hastings. Plaintiff alleges that Defendant

Administrator Hastings failed to properly supervise and/or train the Corrections Officers who

beat Plaintiff at CRAF. Without elaboration, Plaintiff asserts causes of action under "DUE

PROCESS, CONSTITUTIONAL AMENDMENT FORTH [sic] (4TH), CRUEL AND

UNUSUAL PUNISHMENT, VIOLATION UNDER CONSTITUTIONAL AMENDMENT

EIGHT (8TH), CONSTITUTIONAL  VIOLATION OF THE FIFTH (5TH) AMENDMENT."

(Compl., ¶ 9.) The Court construes the Complaint as attempting to assert claims for excessive

use of force in violation of the Eighth Amendment, retaliation in violation of the Fourteenth

Amendment Due Process Clause, and failure to train and supervise.

Plaintiff seeks injunctive relief and monetary damages.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and

prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a

defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis

actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental

defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to

construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972);

Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013). The Court must "accept

as true all well-pled factual allegations in the complaint, and view the allegations of the

complaint in the light most favorable to the plaintiff." Anspach ex rel. Anspach v. City of

Philadelphia, Dept. of Public Health, 503 F.3d 256, 260 (3d Cir. 2007) (citation omitted).

3

In addition, any complaint must comply with the pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)).

## III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

4

IV. <u>ANALYSIS</u>

A.    <u>The Claims Against CRAF Corrections Officers</u>

1.    <u>Excessive Force</u>

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-46 (1981). An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992) (citation omitted). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981). What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. <u>Hudson v. McMillian</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Id.</u> at 9. In such cases, a prisoner may prevail on an

5

Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used. Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321). Thus, not all use of force is "excessive," the level of a constitutional violation. See Paladino v. Newsome, Civil Action No. 12-2021, 2012 WL 3315571, *7 (D.N.J. Aug. 13, 2012).

Here, Petitioner's allegations against the CRAF Corrections Officers who allegedly participated in the beating are sufficient to permit an Eighth Amendment claim to proceed as against Officers E. Hallett, Christee, Valazquez, and Jambucci.

2.    Retaliation

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;'" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v.

6

Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

Here, Plaintiff has adequately alleged that he engaged in a constitutionally-protected activity, filing a complaint against a corrections officer, and that he suffered serious adverse action, a severe beating. Plaintiff has failed, however, to adequately allege facts that the protected activity was a substantial or motivating factor in the decision of the CRAF Corrections Officers E. Hallett, Christee, Valazquez, and Jambucci, to beat Plaintiff. Plaintiff has failed to allege any facts suggesting that Officers E. Hallett, Christee, Valazquez, and Jambucci even had any knowledge of Plaintiff's earlier complaint, at another facility, against Officer R. Hallett. Nor is the mere allegation that Plaintiff believes E. Hallett and R. Hallett to be relatives sufficient to suggest that the submission of a complaint against Officer R. Hallett would have motivated Officer E. Hallett to beat him. For example, Plaintiff does not detail the nature of his complaint against Officer R. Hallett, the consequences (if any) of the complaint for Officer R. Hallett, the nature of the relationship between R. Hallett and E. Hallett. The allegations of the Complaint suggest only that the two officers might be related because they share a common surname. The allegations of the Complaint are not sufficient to raise the claim of retaliation above a speculative level. This claim will be dismissed without prejudice.

B.     The Claim Against Corrections Officer R. Hallett

Plaintiff has alleged no facts, whatsoever, to suggest that Officer R. Hallett is liable to him for any violation of his constitutional rights. Officer R. Hallett is not among the Corrections Officers who are alleged to have participated in the beating at CRAF. In addition, there is no allegation that he had any participation in Officer E. Hallett's alleged decision to beat Plaintiff. The claim against Corrections Officer R. Hallett will be dismissed.

C.    The Claim Against Administrator Hastings

Plaintiff alleges that Administrator Hastings violated his constitutional rights by failing to properly train and/or supervise her subordinates.

1.    Vicarious Liability

To the extent Plaintiff seeks to predicate liability on Administrator Hastings status as the supervisor of the CRAF Corrections Officers who beat him, he fails to state a claim.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60 (3d Cir. 2011).  Plaintiff has alleged no facts suggesting personal involvement by Administrator Hastings in any violation of his constitutional rights.

2.    Failure to Train and/or Supervise

Liability under § 1983 for a supervisor's failure to train or supervise subordinates requires a showing that the failure amounts to the defendant supervisor's "deliberate indifference" to the rights of persons with whom those subordinate employees will come into contact.  Smart v.

8

Borough of Bellmawr, No. 12-3901, 2013 WL 2933638, *1 (3d Cir. June 17, 2013) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Thus, where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," and that failure to train "actually causes injury," a supervisor may be held liable.  City of Canton, 489 U.S. at 390. Moreover, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. ...  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... .  Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

Id. at 390-91.

Here, Plaintiff alleges nothing more than that a small group of Corrections Officers, on a single occasion, beat him in violation of his constitutional rights, plainly an insufficient allegation upon which to base liability for failure to train and/or supervise.  He has alleged no facts suggesting "deliberate indifference" to his rights by Administrator Hastings.  This claim will be dismissed without prejudice.

D.    The Application for Appointment of Counsel

Plaintiff has asked this Court to appoint counsel to represent him in this matter.

Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:

(1) the plaintiff's ability to present his or her own case;
(2) the complexity of the legal issues;
(3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
(4) the amount a case is likely to turn on credibility determinations;
(5) whether the case will require the testimony of expert witnesses;
(6) whether the plaintiff can attain and afford counsel on his own behalf.

[Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).] This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.

Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

Parham, 126 F.3d at 457-58.

In considering the first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience." Tabron, 6 F.3d at 156. In addition, courts should consider whether the plaintiff has access to resources such as a typewriter, photocopier, telephone, and computer. Id. "Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." Parham, 126 F.3d at 459 (citing Tabron, 6 F.3d at 156 and Maclin v. Freake, 650 F.2d 885, 889 (7th Cir. 1981) (per curiam) ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.")). In considering the ability of a plaintiff to investigate the facts, courts "should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules." Parham, 126 F.3d at 460. In considering the credibility factor, "courts should determine whether the case was solely a swearing contest." Parham, 126 F.3d at 460. The necessity of an expert witness "weighs heavily in favor of appointment of counsel." Parham, 126 F.3d at 460. Finally, where other factors weigh in favor of appointment of counsel, evidence that a plaintiff has made extensive unsuccessful efforts to

obtain counsel weighs heavily in favor of appointment. <u>Parham</u>, 126 F.3d at 461.

Appointment of counsel is not appropriate at this time. In his application for appointment of counsel, Plaintiff merely checked a box on a form complaint, and provided no information that would permit this Court to evaluate the governing factors. This denial is without prejudice to Plaintiff or the Court revisiting this issue at a later date, should circumstances warrant.

V. CONCLUSION

For the reasons set forth above, the Eighth Amendment excessive force claim may proceed as against Defendants E. Hallett, Christee, Valazquez, and Jambucci. All other claims will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted here, the Court will grant Plaintiff leave to file an amended complaint.[2]

An appropriate order follows.

Anne E. Thompson
United States District Judge

Dated: 7/10/2013

---

[2] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. <u>See</u> <u>West Run Student Housing Associates, LLC v. Huntington National Bank</u>, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. April 4, 2013) (collecting cases). <u>See also</u> 6 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. <u>Id.</u>